# SUPREME COURT—IN BANCO.

## JANUARY TERM—1870.

*Hartwell and Widemann, J. J.*

### JOSEPH ELLIS *vs.* A. WHITE.

A CHATTEL MORTGAGE is void as to third parties unless recorded, under Section 1263, Civil Code.

A second mortgagee of the same chattels is not ESTOPPED to deny the validity of the prior unrecorded mortgage by reason of this clause in his mortgage deed, viz., "Warranted free from incumbrances and against any adverse claims except my mortgage to Ellis."

Submission of case on an agreed statement.

May 17th, 1868, the firm of Hatfield & Markle, composed

Joseph Ellis *v.* A. White.

of J. W. Hatfield and Jacob Markle, borrowed $100 from the said Ellis, giving therefor their note, secured on a mortgage on "eight yoke of oxen and one cart," possession of which, by the terms of the mortgage deed, remained with the mortgagors until the note matured. This mortgage was never recorded.

September 9th, 1868, said Markle borrowed $400 of said White, giving therefor his note, secured by a mortgage on "eight yoke of working bullock, yokes, bows and chains complete, one cart unfinished (wheels and iron work), three horses, one mule, two yearling heifers." The mortgagor retained possession. The oxen and cart mortgaged to White are the same that were mortgaged to Ellis. The mortgage to White contains these words, viz.: "Warranted free from incumbrances, and against any adverse claims, excepting a first mortgage of one hundred dollars to Ellis." The second mortgage was duly recorded September 17th, 1868.

February 25th, 1869, the firm of Hatfield & Markle became insolvent, and assigned all their property to D. McBryde, who sold at public auction the oxen and cart mentioned in the mortgage, receiving from the sale $491.

Neither of the mortgaged notes has been paid, and the questions are submitted:

1. Whether Ellis' claim should be satisfied in full from the proceeds of the sale.

2. Whether Ellis' claim should be treated as a second mortgage.

3. Whether it should not be treated as an unsecured claim, entitled only to a *pro rata* dividend from the general fund of the estate.

————

W. C. JONES, FOR PLAINTIFF.

1. The defendant is *estopped* from denying the validity of the prior mortgage to Ellis, by the recital of the fact in his subsequent mortgage.

2. He acknowledges the existence of the prior mortgage, and no subsequent act of his can defeat its validity. 2 Abb., N. Y. Dig., p. 585; 4 *Ib.*, pp. 671–672; 1 Met., 307.

3. The effect of registry is to protect the rights of innocent persons or purchasers, by giving notice by the public records; but a person having *actual* notice of a prior unrecorded notice, can not take advantage of the want of registry as an *innocent* purchaser, or mortgagee, but he takes his mortgage subject to the prior lien. 19 Wend., 514; 20 *Ib.*, 17.

4. As far as White is concerned, Ellis' mortgage must be considered in the light of a first mortgage, subject to that incumbrance, and reciting it in a mortgage deed. It was a clear and express acknowledgment of a prior claim, and the equity and law of the case are in favor of Ellis' claim.

5. As to possession, both parties stand in the same relation towards other creditors, except that the presumption of fraud is less in favor of White than Ellis, because the possession by the mortgagors was explained in Ellis' mortgage.

---

### A. F. JUDD, FOR DEFENDANT.

1. Only White's mortgage is valid, being recorded, as required by Section 1263 of the Civil Code, and is, therefore, the first mortgage to be first satisfied.

2. Ellis' mortgage is invalid because it is not recorded, and possession of the chattels was not given.

3. Sections 1262 and 1263 of the Civil Code make a marked distinction between mortgages of real and of personal estate. A mortgage of real estate unrecorded, is void against subsequent purchasers not having notice, whereas an unrecorded mortgage of personal estate is *invalid.* 2 Hilliard on Mortgages, pp. 244 and 253.

4. A subsequent mortgage of personal property, even with notice of an existing prior mortgage, will, if this mortgage is recorded, hold the property against such prior mortgage, if unrecorded. Travis *vs.* Bishop, 13 Met., 304.

Joseph Ellis *v.* A. White.

Denny *vs.* Lincoln, 13 Met., 303, decides that the notice to the second mortgage must be full, clear, and explicit, and must, substantially, give the same information as would be given by the deed itself, and that in that case, the notice was insufficient to distinguish what property was specifically mortgaged. In White's mortgage, the notice was equally deficient.

HARTWELL, J.: We will not consider whether the unrecorded mortgage is good against others than the second mortgagee, who are not parties to this suit, and can not be concluded thereby; the decision in this case decides only the mutual rights of the parties.

The question arises under the following Sections of the Civil Code:

"Section. 1262.   All deeds, leases for a term of more than one year, or other conveyances of real estate within this Kingdom, shall be recorded in the office of the Registrar of Conveyances, and every such conveyance not so recorded shall be void as against any subsequent purchaser in good faith and for a valuable consideration, not having actual notice of such conveyance of the same real estate, or any portion thereof whose conveyance shall be first duly recorded."

"Section 1263.   All mortgages of chattel property, indentures of apprenticeship, articles of marriage settlement, powers of attorney for the transfer of real estate within this kingdom, and agreements of adoption shall, in order to their validity, be recorded in the office of the Registrar of Conveyances, in default of which, no such instrument shall be binding to the detriment of third parties, or conclusive upon their rights and interests."

The notice was sufficiently explicit, in giving the name of the first mortgagee and the amount of the debt first sought to be secured, to put the second mortgagee on his inquiry as to the date at which the first note was payable. In view of

the statutes, is actual notice, in the absence of delivery, equivalent to registry ?

The French law allows creditors and purchasers to hold, even if they had notice of an unrecorded mortgage. "Le defaut de transcription ne pourra etre suplee ni regarde comme couvert par la connaissance que les creanciers, ou les tiers acquereurs, pourraient avoir eue de la disposition par d'autres voies que celle de la transcription." Code Napoleon, No. 1071. The English equity rule made actual knowledge of a previous mortgage deed of real estate equivalent to registry. The statute of Anne required the registry of deeds of land, "otherwise every such conveyance shall be void against any subsequent purchaser for a valuable consideration." The ground on which the English Courts held that actual notice was good, was, that the statute "only intended to give such notice of former incumbrances to purchasers that they might not be defrauded," and that one having notice, "purchases with an ill conscience." Cheval *vs.* Nichols, 1 Str., 664. This construction of registry acts has been made by many of the courts of the United States, although the statutes have now generally made the express exception. 4 Kent's Comm., 192.

In Sawyer *vs.* Eastwood, 19 Wend., 515, an action of trover for a horse, Nelson, Ch. J., held that clear notice of a prior claim is considered, *per se*, evidence of *mala fides*, that by the statute, the unrecorded security was only void against subsequent purchasers in good faith, and that "a purchaser with notice can not claim to be a *purchaser in good faith* within these acts." The cases cited in that decision are, however, cases of conveyances of land. In Gregory *vs.* Thomas, 20 Wend., 17, which was trover for a coach and harness, the defendant was a prior mortgagee, the record of whose mortgage was not renewed according to the statute. The Court held that the plaintiff's full knowledge of the defendant's claim precluded him from standing as a *bona fide*

mortgagee, and that the prior mortgage was good.  But the terms of the New York statute do not allow us to regard these decisions as covering the present case under our statutes, which contain no such limitations concerning *bona fide* purchasers.

By the California statutes, no chattel mortgage is valid without recording, unless by delivery.  Gen. Laws, §501. The California Digest refers to several decisions of the Courts of that State, going the full length of the above New York decisions, but fails to inform us whether those decisions were upon chattel or real estate mortgages.   The laws of that State make an unrecorded real estate mortgage void only as against subsequent purchasers in good faith.   We do not know how the laws stood at the date of the decisions last referred to.   It is to•be regretted that we have thus far failed to obtain a complete set of the Reports of the Supreme Court of a State with which we are so closely connected in trade.

In Maine, the statute is explicit, that "no mortgage of personal property shall be valid against any other persons than the parties thereto," without registry or delivery. Rev. St., p. 558.   In Sawyer *vs.* Pernell, 19 Maine, 167, a mortgage of stock was held not to have been fully recorded, but notice of the mortgage was given to the attaching creditor by the mortgagor.   The Court held that the notice given was insufficient, implying that actual notice, if full, would suffice.

In Stowe *vs.* Meserve, 13 New Hampshire, 50, the Court, (Parker, C. J.) say, "a similar exception (against subsequent creditors with notice) has been held to exist in relation to mortgages of personal property, and for the same reason," but go on to say, "what would be the effect of actual knowledge of the existence of a deed, communicated to a creditor who has procured his process, and is about to levy upon the property, *it is not necessary now to determine.*   In this, no such

knowledge appears." The same learned Justice had said in Smith *vs.* Moore, 11 New Hampshire, 64, that "we *may be required* to hold, that notice will have the effect of a record in mortgages of personal property." Five years later, in Low *vs.* Pettengill, 12 New Hampshire, 339, the same Court (Upham, J.) in the case of a chattel mortgage, refer to "the exception, which has been long established, of actual notice which supersedes the necessity of a record," but merely held that the notice given by handing the mortgage to the clerk to be recorded, was insufficient.

Hilliard, in his treatise on the law of mortgages (vol. 2, p. 253,) says, that on this point "different doctrines have prevailed in the several States, in some of them a distinction being made, with regard to notice, between mortgages of personal property, and those of real estate, which have uniformly been held valid, without recording, against parties with actual notice."

But an examination of all the authorities accessible to us, has failed to show a single case, *under a peremptory statute*, where actual notice has been held to take the place of the record of a chattel mortgage as against a subsequent recorded mortgage. The New Hampshire decisions do not go to that length. In Massachusetts the statute is, that no chattel mortgage shall be valid without recording or delivering, Rev. St., 473. In Denny *vs.* Lincoln, 13 Met., the Court, (Shaw, C. J.) said that rules for the transfer of real and personal property presented such marked differences, "that it is not safe to rely upon the analogy between them," and that they "were inclined to the opinion that an attachment, would hold good against the unrecorded mortgage, although the attaching creditor had notice of it, if it were necessary now to decide that question." But Travis *vs.* Bishop, *Ib.* 304; settled that notice was insufficient without delivering or registration.

Although we decline to adjudicate upon the rights of the

first mortgagee as against other creditors not represented, the question of its validity may to some extent arise in considering whether White can be deemed to have assented to a *void* or merely to a *voidable* mortgage. A chattel mortgage is a conditional sale. The question of the validity of sale without delivery would present the long controversy from Twyne's case to the present day, viz. : whether such retention of possession is a *legal* badge of fraud against subsequent purchasers, or a presumption of fact for the jury, and if a presumption of law, whether final or rebuttable. But regarding the first mortgage as valid between the parties, was the second mortgagee a party to the agreement, to be deemed as having assented to its terms and to have waived any of its legal defects, and to have accepted only the security that remained after payment of the first note to Ellis.

The doctrine of estoppel here comes in, as the plaintiff's counsel argues, with some apparent force. In Green *vs.* Kemp, 13 Mass., 515, it was held that a purchaser of the mere equity of redemption of a usurious mortgage cannot avoid the mortgage by plea of usury. The statute declared such a mortgage to be utterly void. The Court (Wilde, J.) say : "It never could have been intended that a stranger might enter on the mortgage, or commit a trespass on the land, and justify himself under the statute, when all parties interested in the title should acquiesce in the contract. * * A mortgage on a usurious consideration is void only as against the mortgager, and those who may lawfully hold the estate under him."

But in Bridge *vs.* Hubbard, 15 Mass., 97, a case of a usurious note held by a bona fide endorser, the Court, although not unanimously, say : "That the parties liable on the note were not privy to the usurious bargain is not a fact of importance, if the true destination of the note was to secure such a bargain, made by others, for the use of him who was to reap the fruits of the bargain." In the Me-

chanics' Bank *vs.* Edwards, 1 Bar., 272, it was held that a subsequent mortgagee cannot set up usury in the first lien. So in Sands *vs.* Church, 2 Selden, 353, and Stoney *vs.* Am. Life Ins. Co., 11 Page, 635, De Wolf *vs.* Johnson, 11 W., 368, seem to admit this doctrine. But Mr. Justice McLean, in Lloyd *vs.* Scott, 4 Pet., 228, does not think so, and holds that "usurious securities are not only void as between the original parties, but the illegality of their inception affects them even in the hands of third persons who are entire strangers to the transaction."

In the Housatonic and Lee Banks *vs.* Martin, 1 Met., 294, the Court say: "The extent to which the doctrine of estoppel would apply, would be, that if this were a case between the first mortgagees and the plaintiffs, then the plaintiffs could not be permitted to deny that there was a prior mortgage. They must be regarded as asserting and agreeing to hold subject to all the claims which the first mortgagees might by law enforce by virtue of their first mortgage. *But it could not be carried further*. The second mortgagees could not be concluded by showing that the first mortgage—by force of the statute—was merely void, notwithstanding all the good will of the mortgagers to make it good."

In Carpenter *vs.* Cummings, 40 N. H., 158, a party took a mortgage knowing the claim of an attaching creditor, and it was urged that he must be deemed to have admitted the validity of the claim by his declaration to that effect at the time, and to have taken the mortgage subject to the claim. But the Court held otherwise and say: "The evidence to show a waiver of rights under the mortgage was properly excluded, and those declarations were no contract, *for there was no consideration*. They were no estoppel, *for nothing was done or omitted to be done in consequence of them*." Our statute requires registry as an essential to this mortgage as far as other persons are concerned.

We are of the opinion that in this case, White did not

bind himself to admit the validity of the first mortgage. He signed no paper, and received no consideration for any such implied agreement. If the statute required a mortgage, to be valid and binding on third parties, to be signed, sealed and witnessed, would a person taking a mortgage which duly complies with these requisites and refers to a prior mortgage in which they are not found, be held to have assented to its validity? By no principle in law is the recital of a deed void as to any person, to be held as notice to that person of anything except of the existence of the void deed. [See Vassault *vs.* Austin, 36 Cal., 700, decided in January Term, 1869.] The mortgage of Ellis must be postponed to that of White.

Let judgment be entered accordingly.

Honolulu, February 16th, 1870.